**Bridges SCOTT**

v.

**SS CIUDAD IBAQUE, her Engines, Tackle, Furniture and Apparel, and Flota Mercante Grancolombiana, S.A.**

Civ. A. No. 67–108.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 31, 1968.

Clifton S. Carl, Garrett & Carl, New Orleans, La., for plaintiff.

Walter Carroll, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for Grancolombiana, S. A.

Mouton, Roy, Carmouche & Hailey, New Orleans, La., for third-party defendant, James J. Flanagan Shipping Corp., d/b/a New Orleans Stevedoring Co.; Harmon F. Roy, Lafayette, La., Ralph Slovenko, New Orleans, La., of counsel.

MITCHELL, District Judge.

The plaintiff, Bridges Scott, filed suit against the S/S Ciudad Ibaque and her owner as a result of injuries he allegedly received while employed as a longshoreman aboard the Ciudad Ibaque. The vessel's owner, Flota Mercante Gran-

columbiana, S. A., filed a claim for indemnity against the stevedore, James J. Flanagan Corporation.

The Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I

On October 25, 1965, Bridges Scott, the plaintiff, was employed by James J. Flanagan Shipping Corporation d/b/a/ New Orleans Stevedoring Company, as a longshoreman aboard the Ciudad de Ibaque, then anchored in the Mississippi River at the Port of New Orleans.

### II

On October 25, 1965, the Ciudad de Ibaque was owned by the defendant, Flota Mercante Grancolumbiana, S. A.

### III

On the day in question, Bridges Scott and other longshoremen were engaged in removing sacks of coffee, each of which weighed approximately 150 pounds, from one of the 'tween deck hatches of the Ciudad de Ibaque. The cargo of coffee had not been disturbed between the time of the ship's arrival and the time of discharge.

### IV

The coffee was stowed in tiers or layers, one sack upon another, except for the exposed face adjacent to the square of the hatch where the sacks were "tied" by stowing one layer fore and aft and the adjacent layer athwartship.

### V

The chief mate of the vessel, Gilberto Sanquino, and the stevedoring foreman, Arnold Hingle, inspected the stowed coffee prior to discharge thereof and neither found anything out of the ordinary nor unsafe about the stow.

### VI

The sacks were being discharged by pulling them off the stow and placing them on pallet boards. Bridges Scott was injured when, without warning, a large number of sacks fell from the stow, nearly covering his body and doing damage to his left knee and abdomen.

### VII

Complainant was guilty of no fault whatsoever leading to his initial injury. To the contrary, the injury complained of occurred when stowed sacks fell without warning.

### VIII

Bridges Scott was totally disabled by his injuries from October 25, 1965 until March 27, 1966.

### IX

Prior to the date of his injury, complainant's weekly wages averaged $140.-32.

### X

American Mutual Insurance Company, intervenor, has paid compensation to complainant in the sum of $3,012 and incurred medical expenses of $937.73 in his behalf.

### XI

On December 19, 1966, complainant fell off of a porch at his residence and injured his right ankle. He claimed that the fall was a result of his prior injury, but the Court finds that there is no causal relationship between the initial injury of October 25, 1965 and the injury of December 19, 1966.

### XII

The unloading procedure was customary and ordinary and no conduct of the stevedoring contractor through any of its agents or employees contributed proximately to the injuries incurred by Bridges Scott.

### XIII

The defendant, Flota Mercante Grancolombiana, S. A., has failed to explain the reason why the sacks fell and it can only be presumed that they fell through some non-apparent defect in their stowage.

## XIV

■ There was some testimony concerning a list of the vessel which fell far short of proof by a preponderance of the evidence. However, if there was a slight list, as is indicated by that testimony, the court finds that the list was not a proximate cause of the accident and resulting injuries.

## CONCLUSIONS OF LAW

### I

This Court has jurisdiction over the subject matter and the venue is proper.[1]

### II

■ A shipowner does not owe an obligation to provide an accident free vessel but only one reasonably fit for its intended uses.[2]

### III

■ This duty, i. e., to provide a seaworthy vessel, is absolute and nondelegable.[3]

### IV

■ The duty to provide a seaworthy vessel extends to the manner in which the cargo is stowed. A ship might be unseaworthy because of improper stowage.[4]

### V

■ It may be presumed that a vessel is unseaworthy when stowed cargo falls without warning and without apparent cause. In such a case, the burden is upon the vessel owner to explain the cause of such falling, which burden defendant has failed to sustain.[5]

### VI

■ The vessel was unseaworthy and this unseaworthiness was a proximate cause of complainant's injuries.

### VII

■ A judgment totaling $13,949.73 is justified by the evidence and will adequately compensate complainant for his injuries.

### VIII

■ The right of intervenor, American Mutual Insurance Company, to have its lien for compensation and medical expenses satisfied out of the proceeds of this judgment is recognized and this lien in the sum of $3,949.73 is maintained.

### IX

■ The claim for indemnity asserted by defendant against James J. Flanagan Shipping Corporation is denied. The stevedoring contractor was guilty of no conduct which amounted to a breach of its warranty of workmanlike service. To furnish a vessel whose cargo falls without apparent cause or warning constitutes conduct on the part of the ship and her owner sufficient to preclude indemnity.

### X

Giving consideration to the history of this case and the respective faults of the parties, this Court allows interest at the rate of five per centum per annum from October 25, 1965, the date of the accident, until this judgment is paid.

Let judgment be entered accordingly.

1. 28 U.S.C. § 1333.

2. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

3. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

4. Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1960);

Rich v. Ellerman & Bucknall S.S. Co., 278 F.2d 704 (CA 2–1960); Curtis v. A. Garcia Y Cia, 241 F.2d 30 (CA 3–1957); Palazzolo v. Pan Atlantic S.S. Corp., 211 F.2d 277 (CA 2–1954), aff'd., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

5. Gibbs v. Kiesel, 382 F.2d 917 (CA 5–1967).