John McKINLEY

v.

SKIBS A/S ARIZONA.
LEIF HOEGH & CO., A/S

v.

PHILADELPHIA CEILING AND
STEVEDORING CO.

Civ. A. No. 33969.

United States District Court
E. D. Pennsylvania.

July 18, 1968.

Krusen, Evans & Byrne, Robert Cox, Philadelphia, Pa., for third-party plaintiff.

Kelly, Deasey & Scanlan, Wm. R. Deasey, Philadelphia, Pa., for third-party defendant.

## OPINION

KRAFT, District Judge.

In the initial action for personal injuries to the plaintiff, a longshoreman, the jury returned a verdict in favor of the plaintiff for $30,000. In the third-party indemnity action, the jury found in favor of the third-party defendant.

After the entry of appropriate judgments on the verdicts the third-party plaintiff filed a motion for judgment notwithstanding the verdict, or alternatively, for a new trial in its third-party actions against the stevedore.

■ At the outset, we observe that the third-party plaintiff neglected upon the trial to move for a directed verdict under F.R.Civ.P. 50(a). This omission precludes us from granting judgment notwithstanding the verdict under F.R.C.P. 50(b). Massaro v. United States Lines Co., 307 F.2d 299 (3 Cir. 1962); Brandon v. Yale & Towne Mfg. Co., 220 F.Supp. 855 (E.D.Pa.1963) aff'd per curiam 342 F.2d 519 (3 Cir. 1965).

We direct our attention next to the motion for new trial. Bales of cotton waste, which measured approximately 4½ to 5 feet in length, 18 inches in width and 2 to 2½ feet in height, and which weighed from 360 to 500 pounds, were being discharged from the vessel. The bales were wrapped in burlap and bound with eight to ten steel bands. The ends of the bales were rectangular in shape and were not covered with burlap.

The bales, loaded in India, were stowed on their sides in three tiers in the after end of the lower hold. They were stowed in an interlocking manner so that the bottom tier was placed lengthwise athwartship, the middle tier lengthwise, fore and aft, and the top tier, lengthwise athwartship. On the tweendeck, just above the lower hold, a cargo of cashew nuts was stowed.

No dunnage, chocking or supports had been inserted between the bales when the vessel left India. Part of the baled cargo was discharged in New York prior to the ship's arrival in Philadelphia.

When the longshoremen entered the lower hold, they immediately noticed that the bales had shifted, with the top tier overhanging the middle tier by approximately 4 to 5 inches, with open spaces between bales. The plaintiff, McKinley, and other members of the gang assigned to unload the bales, informed their foreman, Murray, of this condition promptly after they entered the lower hold. Murray advised the men to "Be careful * * *." "Be particular." "Do the best you can at it." The evidence fairly discloses that Murray thought the condition of the baled cargo hazardous, but he did not discontinue the unloading or inform the ship superintendent, because he did not think that the condition was "extremely unsafe."

Thereafter, McKinley and his partner, who were working the inshore side of the hold commenced to unload the bales. Two other men, the Goldsmith brothers, were working closely in the same area, near a partition which divided the after end of the lower hold.

The longshoremen first removed those top bales which overhung the middle tier, then began to discharge the middle tier. The bottom tier was left intact to shorten the distance of fall of the bales to be toppled from the top tier. Rope slings were placed on the bottom tier on to which the bales were toppled or rolled from the upper tiers, six to a draft. The entire top tier was not removed before the men started work on the middle tier. The procedure, thus employed, was to "step down" the upper two tiers to the bottom tier.

After five drafts had been discharged, McKinley was loading his sling with the sixth draft, with his back to the stow, when he heard someone (Goldsmith) shout, "Look Out." McKinley jumped

up and was struck on the leg by a falling bale.

There is no credible evidence in the record which indicates from what location in the stow the bale fell, but there was sufficient evidence to permit the jury to conclude that the bale simply slid or fell free from the top tier, because of the loose or shifted condition of the cargo.

Generally stated, the plaintiff's claims for unseaworthiness and negligence were based upon the ship's failure: (1) properly to stow and secure the cargo with dunnage, chocking and supports; (2) to provide the plaintiff with a reasonably safe place to work; and (3) the stevedore's non-compliance with the Safety and Health Regulations for Longshoring promulgated by the United States Department of Labor § 9.83, "Tiering and Breaking Down

"(a) When necessary, cargo shall be secured or blocked to prevent its shifting or falling."

"(b) In breaking down, precautions shall be taken, when necessary to prevent the remaining cargo from falling."

Specifically, third-party plaintiff urges that we erred in refusing its Point for Charge No. 4 in the third-party action, which reads as follows:

"4. If you conclude from the evidence that the plaintiff's accident resulted from an unsafe place to work or unseaworthy condition, which was *created* or *brought into play* by Philadelphia Ceiling through failure to do its work in a reasonably safe and proper manner, or through failure to exercise proper supervision or control over the work, then Philadelphia Ceiling breached the duty it owed to the shipowner." (emphasis supplied)

We declined so to charge the jury because of the manner in which point No. 4 was drafted. It was clear that, if the lower hold was an unsafe place to work because of improper stowage of the cargo, there was no evidence whatever that such condition was "created" by the stevedore.

We *did not* refuse point No. 4 because we declined to follow the "bringing into play" doctrine promulgated in Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). However, after an examination and careful consideration of all the evidence, as a "thirteenth juror"[1], as we must, we conclude that it was error to fail to charge the jury specifically on the principle enumerated in the *Crumady* case.

If we assume that the jury fairly concluded that the plaintiff's injury resulted solely from improper stowage of the cargo, which caused or permitted the bale to fall unaided by any affirmative act of the stevedore—it is indeed obvious that the injury would never have occurred had the stevedore not commenced to discharge the cargo, after knowledge and notice of the dangerous condition of the baled cargo, without complying first with the "Tiering and Breaking Down" regulations of the Department of Labor, supra. Those regulations impose no condition upon the stevedore's warranty of workmanlike service. Provenza v. American Export Lines, Inc. et al., 324 F.2d 660 (4 Cir. 1963); cert. denied 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971 (1964).

In our considered judgment the overwhelming weight of the evidence compels the conclusion that the jury's verdict in the third-party action was contrary to right and justice, and resulted, in part, from our own fundamental omission to instruct the jury specifically that the stevedore breached its warranty if it "brought the unseaworthiness of the vessel into play." Crumady

---

1. Binder v. Commercial Travelers Mutual Acc. Ass'n of America, 165 F.2d 896, 902 (2 Cir. 1948); General Accident Fire & Life Assur. Corp. v. Dickinson, 61 F. Supp. 153 (D.C.Cal.1945) 3 Fed.Prac. & Proc. Barron and Holtzoff § 1304 p. 361 (Wright ed. 1958); 6 A Moore's Fed. Prac.R. 59 p. 3818 (2nd ed. 1966).

v. The Joachim Hendrik Fisser, supra, 358 U.S. at p. 429, 79 S.Ct. at p. 448.

### ORDER

Now, this 18 day of July, 1968, it is ordered that:

(1) the motion of the third-party plaintiff for judgment notwithstanding the verdict be, and it is, denied;

(2) the alternative motion of the third-party plaintiff for a new trial in the third-party action be, and it is, granted.