Bridges SCOTT, Plaintiff-Appellee,

v.

The SS CIUDAD DE IBAGUE, her engines, tackle, furniture and apparel, Defendant,

and

Flota Mercante Grancolombiana, S. A., Defendant-Appellant.

No. 26545.

United States Court of Appeals, Fifth Circuit.

April 20, 1970.

# 1106

Walter Carroll, Jr., New Orleans, La., for appellant.

Clifton S. Carl, New Orleans, La., Harmon F. Roy, H. Purvis Carmouche, Jr., Lafayette, La., for appellee.

Before GOLDBERG, DYER and CARSWELL, Circuit Judges.

GOLDBERG, Circuit Judge:

We consider here a familiar problem: A shipowner, having paid damages for personal injuries suffered by a longshoreman on board its vessel, seeks indemnity from the longshoreman's stevedore employer on the theory that the stevedore breached its warranty of workmanlike performance.[1] Having lost the battle in the court below, the shipowner comes to this court armed with a variety of appellate arguments fashioned from inferences and presumptions. Because we conclude that the facts of this case foreclose a successful assertion of the shipowner's arguments, we affirm the trial court's denial of indemnity.

## I.

Bridges Scott, a longshoreman employed by the New Orleans Stevedoring Company (stevedore), was injured while working on board the Ciudad Ibague, a vessel owned by Flota Mercante Grancolombiana, S. A. (shipowner). Scott and other longshoremen were removing sacks of coffee from one of the 'tween deck hatches of the ship. The sacks, each of which weighed approximately 150 pounds, were stacked one atop another

to a height above the heads of the longshoremen. Working in pairs, the men were pulling the sacks down and placing them on pallet boards for removal. The sacks which had not yet been pulled down appeared to be stacked in a normal manner; there was no apparent defect in their stowage. The evidence also indicates that the procedures used by the longshoremen were customary and ordinary. Nevertheless, for some unexplained reason, a number of the heavy sacks fell from the stow completely without warning and landed on Bridges Scott.

Scott brought suit against the ship and its owner for damages for his personal injuries, alleging unseaworthiness and negligence. After answering Scott's complaint the shipowner filed a third-party complaint against the stevedore for indemnity, alleging that any injuries suffered by Scott had resulted from a breach of the stevedore's warranty of workmanlike performance. On these two claims—Scott's claim for damages and the shipowner's claim for indemnity—the case proceeded to trial.

At trial none of the parties was able to offer evidence to explain precisely why the sacks fell. On the basis of the circumstantial evidence that was introduced, the court as the trier of fact inferred that the sacks "fell through some non-apparent defect in their stowage." Scott v. SS Ciudad Ibaque, E.D. La. 1968, 285 F.Supp. 613, 615. Concluding that the vessel was therefore unseaworthy,[2] the court entered judgment

---

1. The doctrine that a shipowner may proceed against a stevedore for indemnity on the theory of breach of the stevedore's implied warranty of workmanlike performance originated in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. For subsequent applications of the Ryan doctrine see Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed. 2d 732; Waterman S. S. Corp. v. Dugan & McNamara, Inc., 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413; Weyerhaeuser S. S. Co. v. Nacirema Op-

erating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

2. In reaching the conclusion that the ship was unseaworthy, the court reasoned as follows: "The duty to provide a seaworthy vessel extends to the manner in which the cargo is stowed. A ship might be unseaworthy because of improper stowage." Furthermore, "[i]t may be presumed that a vessel is unseaworthy when stowed cargo falls without warning and without apparent cause. In such a case, the burden is upon the vessel owner to explain the cause of such falling, which burden defendant has failed to sustain." 285 F.Supp. at 616.

for plaintiff Scott.[3] The court denied the shipowner's indemnity claim against the stevedore on the grounds that (1) the stevedore had not been guilty of any conduct which would constitute a breach of its warranty of workmanlike performance and (2) the shipowner, by furnishing a vessel whose cargo fell without apparent cause or warning, had been guilty of conduct sufficient to preclude indemnity.

The shipowner initially filed a notice of appeal from both judgments against it. Later, however, the shipowner settled with plaintiff Scott, and Scott was dismissed from this proceeding. Consequently, the only claim now before this court is the shipowner's claim against the stevedore for indemnity.

In support of its claim for indemnity appellant shipowner now advances four contentions, which we discuss seriatim. For the reasons hereinafter given, we conclude that none of these contentions compels a reversal of the judgment below.

## II.

Appellant's initial contention is that "the unexplained falling of cargo being discharged by a contract stevedore creates a presumption" that the stevedore breached its warranty of workmanlike performance. As this contention is developed in appellant's brief, it becomes clear that appellant is attempting to invoke the aid of an inference in the nature of res ipsa loquitur.[4] We are asked, in effect, to hold that this is a case in which the trier of fact could have, and should have, inferred a breach of the stevedore's warranty.

In assessing appellant's contention we note at the outset that the application of the doctrine of res ipsa loquitur is not unknown in the law of admiralty. The doctrine has been applied in admiralty actions grounded in negligence theories. Johnson v. United States, 1948, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (seaman's action for personal injuries under the Jones Act); Furness, Withy & Co. v. Carter, 9 Cir. 1960, 281 F.2d 264 (longshoreman's action for personal injuries under the general maritime law). See also Logan Charter Service, Inc. v Cargill, Inc., 8 Cir. 1967, 373 F.2d 54, 60; Russell, Poling & Company v. Tug Alice M. Moran, S.D.N.Y. 1962, 205 F.Supp. 874, 876. Moreover, in personal injury actions based on the theory of unseaworthiness—a species of liability without fault—an inference in the nature of res ipsa loquitur has been applied. Gibbs v. Kiesel, 5 Cir. 1967, 382 F.2d 917, 919; Petterson v. Alaska S.S. Co., 9 Cir. 1953, 205 F.2d 478, 479, aff'd per curiam, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L. Ed. 798. See also Marshall v. Ove Skou Rederi A/S, 5 Cir. 1967, 378 F.2d 193, cert. denied, 389 U.S. 828, 88 S.Ct. 86, 19 L.Ed.2d 84.

██ We have no doubt that such an inference—whether bearing the label "res ipsa loquitur" or not—can properly be applied, when the factual context is appropriate, in a shipowner-stevedore indemnity action. In the present indemnity action, however, we need not decide whether an inference in the nature of res ipsa loquitur could properly have been applied by the trial court, for the court impliedly rejected any such inference in its findings of fact. After hearing all the evidence, the court found that "[t]he unloading procedure was customary and ordinary and *no conduct of the stevedoring contractor through any of its agents or employees contributed proximately to the injuries incurred by Bridges Scott.*" 285 F.Supp. at 615 (emphasis added).

---

3. The judgment also provided that Scott's total recovery would be reduced by the amount necessary to reimburse the insurance carrier which had paid compensation and medical expenses as a result of his injuries. See 285 F.Supp. at 615, 616.

4. Appellant in its brief states flatly that "the doctrine of res ipsa loquitur can be applied here."

■ The doctrine of res ipsa loquitur does not have such compulsive power that its inference of fault can override a specific negation of fault by the trier of fact. See American Commercial Lines, Inc. v. Silver Creek Coal Co., 7 Cir. 1968, 393 F.2d 178, 183; United Fruit Co. v. Marine Terminals Corp., 9 Cir. 1967, 376 F.2d 1007, 1009. Though the doctrine has strength, it clearly does not possess such Samsonian muscle. Consequently, unless the trial court's finding of fact is set aside on appeal, it effectively forecloses any inference that the stevedore breached its warranty of workmanlike performance.

■ The cordon surrounding a finding of fact by virtue of Rule 52(a) is neither porous nor malleable; unless a finding is clearly erroneous, it cannot be set aside on appeal.[5] Applying the "clearly erroneous" standard to the fact finding now in question, we note that the record is replete with evidence (1) that the cargo of coffee had not been disturbed by the stevedore prior to the day of Bridges Scott's injury, (2) that there was no apparent defect in the stow, and (3) that the procedures used by the stevedore's employees were in all respects customary and ordinary. In the light of this evidence, we cannot label as "clearly erroneous" the court's finding that "no conduct of the stevedoring contractor . . . contributed proximately to the injuries incurred by Bridges Scott." Since the finding must stand, appellant's res ipsa loquitur argument must fall.

### III.

■ As an alternative contention appellant advances the argument that the stevedore should be held liable for a breach of its warranty of workmanlike performance on the ground that "inherent risks in a contracted activity under the full direction and control of a contract stevedore rest with the stevedore as the party best situated to adopt preventive measures and reduce the likelihood of injury." Appellant obviously intends to include within this principle all defects in cargo and equipment, whether apparent or not. Thus appellant is asking this court to hold, in effect, that a stevedoring contractor is a virtual insurer as to *every* risk which may result in injury to a longshoreman engaged in the unloading of cargo. Such an expansive principle is not the law, and it should not be the law.

Indeed, the principle espoused by appellant has been expressly repudiated by this court. In Cia Maritima del Nervion v. James J. Flanagan Shipping Corp., 5 Cir. 1962, 308 F.2d 120, a case involving a defective ladder on a ship, we employed language which was explicit on this point:

"It has been clear since Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, that the shipowner's action for indemnity is not founded upon a tort or any duty which the stevedore owes its employee, but rather upon the contract between the shipowner and the stevedore and the stevedore's implied warranty of workmanlike service in stowing the cargo. This contractual obligation to perform the duties with reasonable safety extends not only to the actual handling of cargo, but to the 'use of equipment incidental thereto' as well. Weyerhaeuser Steamship Co. v. Nacirema

---

5. Rule 52(a) provides in pertinent part that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Since the date of the unification of the admiralty and civil rules in 1966, Rule 52(a)—like all the Federal Rules of Civil Procedure—has specifically applied to admiralty actions as well as to other civil actions. See Rule 1, Fed.R.Civ.P. Moreover, even before the unification of the rules the Supreme Court had held that the proper standard for appellate review in admiralty cases was the "clearly erroneous" standard. McAllister v. United States, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20, 24.

Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491. And, even though the vessel or its equipment may themselves be unseaworthy, if the stevedore brings this condition into play, he is liable to indemnify the owner for any damages which may be sustained because of the breach of warranty. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Calmar Steamship Corp. v. Nacirema Operating Co., 4th Cir. 1959, 266 F.2d 79, cert. den. 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62. See Halliburton Co. v. Norton Drilling Co., 5th Cir. 1962, 302 F.2d 431, 434–435. *But the stevedore is not an insurer or guarantor of any and all accidents which may result in injury to a longshoreman working on the vessel."* 308 F.2d at 123 (emphasis added).

Other courts have also recognized that there are limits to the scope of the stevedore's liability for defects in a vessel's cargo and equipment. In Vaccaro v. Alcoa Steamship Co., 2 Cir. 1968, 405 F.2d 1133, the Second Circuit discussed the scope of a stevedore's duty to discover defects in these words:

"A stevedore company's contractual 'duty to remedy, or have the ship's crew remedy, a dangerous condition that exists for a period sufficient for the stevedore to have constructive notice thereof' is well established. Drago v. A/S Inger, 194 F.Supp. 398, 405 (E.D.N.Y. 1961), aff'd, 305 F.2d 139 (2 Cir.), cert. denied, sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962). See also Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 132–134, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Even if the shipowner is at fault, the stevedore company's implied warranty of workmanlike service, and hence its duty to indemni-

fy the shipowner, may not be extinguished where the stevedore is responsible for bringing into play the defect which caused the seaman's injury. Drago v. A/S Inger, 305 F.2d 139, 143 (2 Cir. 1962), cert. denied, sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962). See Crumady v. The Joachin Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); American Export Lines, Inc. v. Revel, 266 F.2d 82, 87 (4 Cir. 1959). But the stevedore has no duty to inspect a ship before sending its men aboard. Orlando v. Prudential S. S. Co., 313 F.2d 822 (2 Cir. 1963). *Nor is a stevedore responsible for latent defects not discoverable by a reasonable, if only a cursory, inspection.* D'Amico v. Lloyd Brasileiro Patrinonic Nationale, 354 F.2d 33 (2 Cir. 1965); Ignatyuk v. Tramp Chartering Corp., 250 F.2d 198 (2 Cir. 1957)." 405 F.2d at 1138 (emphasis added).

See D/S Ove Skou v. Hebert, 5 Cir. 1966, 365 F.2d 341, 348; Cia Maritima del Nervion v. James J. Flanagan Shipping Corp., *supra*, 308 F.2d at 124–125; Parker v. United States, D.Or. 1963, 223 F.Supp. 647, 650; Sciarrillo v. Steamship S/S Fred Christensen, S.D.N.Y. 1962, 206 F.Supp. 182, 187; Ray v. Compania Naviera Continental, S.A., D. Md. 1962, 203 F.Supp. 206. These and other court decisions have established the principle that the stevedore is not chargeable with knowledge of defects which are not discoverable by a reasonable, but cursory, inspection.[6]

Appellant, however, seeks to avoid this principle by a misplaced reliance on language used by the Supreme Court in Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732. In *Italia* the Court held that the stevedore's warranty of workmanlike performance

---

6. To charge stevedores with a duty to make a more thorough inspection would be unrealistic; for economic reasons shipowners could not allow thorough, time-consuming inspections. See Cia Maritima del Nervion v. James J. Flanagan Shipping Corp., 5 Cir. 1962, 308 F.2d 120, 123–125; Ray v. Compania Naviera Continental, S.A., D.Md.1962, 203 F.Supp. 206, 211.

was breached when one of its employees was injured because of a non-apparent defect in an item of equipment supplied by the stevedore, even though the stevedore had not been guilty of any conduct which would constitute negligence in tort law. In explaining the result, the Court observed that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." 376 U.S. at 324, 84 S.Ct. at 754, 11 L.Ed.2d at 740.

Purporting to rely on this language, the shipowner in the present case asserts the following as a statement of the present law:

> "Because of the nature of stevedoring, there exist many inherent dangers to employees. The Supreme Court has said that these inherent risks should fall to the stevedore, as distinguished from the shipowner."

It is obvious that this statement involves a misconception of both the holding and the language in *Italia*. The Court in that case did not say that liability should always fall upon the *stevedore*, but rather "upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." The Second Circuit has articulated this concept in these words:

> "The ultimate function of the doctrine of unseaworthiness and the corollary right of the shipowner to indemnification from the stevedore firm is to allocate losses caused by shipboard injuries to those who are best situated to minimize, if not eliminate, the particular risk involved." Bertino v. Polish Ocean Line, 2 Cir. 1968, 402 F.2d 863, 866.

In *Italia*, since the injury was caused by a defect in equipment *supplied by the stevedore*, the stevedore *was* better situated than the shipowner to minimize the risk of injury. In the present case, however, the facts present a sharply contrasting picture. In this case the trial court found that the injury was caused

by a non-apparent defect in the stowage of the cargo, and we perceive no error in this finding.[7] Thus the defect which caused the injury originated either during the loading operation or during the voyage. In such a situation it would not be reasonable to characterize the unloading stevedore as the party best situated to minimize the risk of injury.

The stevedoring contractor involved here—the New Orleans Stevedoring Company—did not stow the coffee. It was only the *unloading* stevedore, and as such it took the stow as it found it. Many, many things could have occurred both during the loading and during the transit of the vessel over which the stevedoring company had no control. We must not forget that the Ciudad de Ibaque had been loaded by others in a distant port, navigated through seas by the ship's crew, and anchored in the Port of New Orleans before the stevedoring company ever appeared on the scene. The stevedore did conduct a reasonable inspection of the cargo, but the defect was not apparent.

The latent defect in stowage which caused the injury was a defect of which the stevedore's employees were not the creators and of which they had no knowledge. To cast the stevedore in liability in such a fact situation would be an exceedingly harsh result. We reject appellant's contention that an unloading stevedore must be held liable for *every* defect which creates a risk of injury to longshoremen.

### IV.

Appellant shipowner advances yet another alternative argument, this one based on statutory and regulatory provisions applicable to stevedoring contractors. The statutory provisions upon which appellant bases its argument are found in 33 U.S.C.A. § 941, which forms part of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Section 941(a) provides in

---

7. Our standard of review is the "clearly erroneous" standard. See footnote 5 *supra*.

pertinent part that every employer of longshoremen

> "*shall furnish and maintain employment and places of employment which shall be reasonably safe for his employees* in all employments covered by this chapter and shall install, furnish, maintain, and use such devices and safeguards with particular reference to equipment used by and working conditions established by such employers as the Secretary may determine by regulation or order to be reasonably necessary to protect the life, health, and safety of such employees, and to render safe such employment and places of employment, and to prevent injury to his employees." (Emphasis added.)

Pursuant to the statute the Secretary of Labor has promulgated "Safety and Health Regulations for Longshoring," 29 C.F.R. § 1504.1 et seq.[8] Appellant directs our attention to 29 C.F.R. § 1504.-83(b), which deals in a general way with the subject of breaking down cargo, i.e., removing items from high stacks of cargo. Section 1504.83(b) provides as follows:

> "In breaking down, precautions shall be taken, when necessary, to prevent the remaining cargo from falling."

Appellant contends that the stevedore failed to comply with the statute and the regulation and that this failure constituted a breach of its warranty of workmanlike performance. In making this argument appellant cites several cases[9] which are said to support the proposition that the Secretary's regulations "can properly be considered as a stevedore's standard of conduct." We need not delve into the ramifications of appellant's cases, however, for in the present case we are unconvinced that the record discloses any violation by the stevedore of the standard embodied in the statute and the regulation. We can perceive no reason to conclude that the stevedoring contractor (1) failed to maintain a place of employment "reasonably safe for his employees" within the meaning of the statute or (2) failed to abide by the command of the regulation to take precautions, "when necessary, to prevent the remaining cargo from falling."

We consider it relevant to note that the shipowner cannot tell us with any meaningful degree of specificity the *manner* in which the stevedore supposedly failed to comply with the statute or with the regulation. Appellant's brief contains nothing more than some generalities couched in terms of the regulation. For example, in an effort to show that special precautions were necessary in breaking down the cargo, appellant offers only an ingenuous display of circuitous reasoning aided by hindsight:

> "That precautions were necessary to prevent the remaining cargo from falling is indisputably evidenced by the fact of the falling."

With similar imprecision, appellant offers a suggestion concerning the nature of the special precautions which should have been taken:

> "The stevedore, at the expense of no more than a little time and effort on the part of its work force, could have approached the work in such a way that the sacks which fell would have been removed first and the risk of injury would not have existed."

This "suggestion" borders on the frivolous, for the evidence indicates —and the trial court found—that the

8. See Provenza v. American Export Lines, 4 Cir. 1963, 324 F.2d 660, 663, cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971.

9. Venable v. A/S Det Forenede Dampskibsselskab, 4 Cir. 1968, 399 F.2d 347; Provenza v. American Export Lines, Inc., 4 Cir. 1963, 324 F.2d 660, cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971; McKinley v. Skibs A/S Arizona, E.D.Pa.1968, 286 F.Supp. 691; Simmons v. Gulf and South American S. S. Co., E.D.La.1966, 260 F.Supp. 525, aff'd per curiam, 5 Cir. 1968, 394 F.2d 504; Ray v. Compania Naviera Continental, S.A., D.Md.1962, 203 F.Supp. 206.

stevedoring contractor and its employees had absolutely no warning that anything was wrong with the cargo stow prior to the moment the sacks fell. A reasonable inspection by the stevedoring foreman had failed to disclose any defect in the stow, and no defect was observable by the longshoremen who were removing the cargo. Under these circumstances the stevedoring contractor had no reason to take extraordinary precautions in breaking down the cargo. The mere fact that the sacks of coffee fell is simply not enough to convict the stevedore of a violation of either the statute or the regulation.

### V.

The shipowner's final contention concerns the concept of "conduct sufficient to preclude indemnity" in shipowner-stevedore cases. In Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, the Supreme Court stated that when a stevedore breaches its warranty of workmanlike performance the shipowner is "entitled to indemnity *absent conduct on its part sufficient to preclude recovery*." 355 U.S. at 567, 78 S.Ct. at 441, 2 L.Ed.2d at 494 (emphasis added). Applying this concept in the instant case, the trial court held that the furnishing of "a vessel whose cargo falls without apparent cause or warning constitutes conduct on the part of the ship and her owner sufficient to preclude indemnity." 285 F.Supp. at 616. Appellant shipowner now attacks the validity of this holding.

In the present posture of this case, we need not—and we do not—reach this issue. Since we have held that no conduct on the part of the stevedore constituted a breach of its warranty of workmanlike performance, the shipowner is not entitled to recover even if its own conduct was completely spotless. We therefore eschew any inquiry into the question whether the shipowner's conduct in this case was or was not conduct sufficient to preclude indemnity.

### VI.

For the reasons we have stated, we are unpersuaded that the shipowner is entitled to recover under any of its alternative theories. Each of its projected routes to the destination of indemnity is effectively blocked by legal impediments. Since no breach of the stevedore's warranty of workmanlike performance has been established, the court below was correct in denying the shipowner's claim for indemnity.

The judgment of the district court is affirmed.