**Affirmed and Memorandum Opinion filed August 27, 2024.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-23-00585-CV

_____

**GABRIEL FLUERARU, Appellant**

**V.**

**HAMMONIA REEDEREI GMBH & CO. KG, PETER DOHLE SCHIFFAHRTS-KG, GULF STREAM MARINE, INC., AND DOHLE MANNING AGENCY ROMANIA, Appellees**

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-76592**

## M E M O R A N D U M   O P I N I O N

Appellant Gabriel Flueraru was descending via ladder into the hold of a cargo ship when he fell to the floor below. Flueraru sued appellees Hammonia Reederei GMBH & Co. KG, Peter Dohle Schiffahrts-KG, Gulf Stream Marine, Inc., and Dohle Manning Agency Romania, asserting claims for negligence.

Appellee Gulf Stream Marine, Inc. ("GSM") moved for summary judgment

and argued that — as the stevedore employed only to load the ship's cargo — it did not breach a duty of care that caused Flueraru's injuries. The trial court granted summary judgment on Flueraru's claim against GSM and Flueraru appealed. For the reasons below, we affirm the trial court's summary judgment.

## BACKGROUND

Flueraru was the third officer aboard the cargo vessel M/V Industrial Crescent, which is owned and operated by Hammonia Reederei GMBH & Co. KG and Peter Dohle Schiffarhts-KG. Flueraru was employed by Dohle Manning Agency Romania.

On March 16, 2019, Flueraru was supervising the cargo-loading operation undertaken by stevedore[1] GSM. GSM employees were loading cargo into Hold No. 3 when Flueraru attempted to descend into the hold using a ladder affixed to the wall. According to his petition, Flueraru "grabbed ahold of the [ladder's] handrail and it immediately gave way and bent back as if elastic." Flueraru fell approximately 20 feet to the bottom of the hold. Shortly thereafter, another ship employee attempted to descend the ladder but also fell, landing on Flueraru. Flueraru was removed from the hold and transported to the hospital.

As shown in the photographs below, the ladder in question descended from a doorway to the bottom of Hold No. 3. The railings parallel to the ladder's rungs were severed at approximately the same location. According to the summary judgment evidence, this gap was made to accommodate a tweendeck in Hold No. 3. Although not in use at the time of the incident, a tweendeck serves to divide the hold into an upper and lower portion.

---

[1] A stevedore is a "company that hires longshore and harbor workers to load and unload ships." *Stevedore*, Black's Law Dictionary (11th ed. 2019).



Five months after his fall, Flueraru sued appellees and asserted claims for negligence. The trial court signed two orders of nonsuit pertaining to the claims against Hammonia Reederei GMBH & Co. KG, Peter Dohle Schiffarhts-KG, and Dohle Manning Agency Romania.

GSM was the sole remaining defendant and moved for summary judgment, which the trial court granted in an order signed May 30, 2023. Flueraru timely appealed.

<strong>ANALYSIS</strong>

In its traditional summary judgment motion, GSM argued it did not breach a duty of care as necessary to maintain Flueraru's negligence claim. For the reasons below, we conclude the trial court did not err in granting summary judgment on this basis.

## I.    Standard of Review and Governing Law

We review the trial court's grant of a motion for summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the non-movant and draw every reasonable inference and resolve all doubts in his favor. *M.D.*

*Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23-24 (Tex. 2000) (per curiam); *Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The party moving for traditional summary judgment has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Willrich*, 28 S.W.3d at 23. A defendant seeking a traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Third Coast Servs., LLC v. Castaneda*, 679 S.W.3d 254, 257 (Tex. App.—Houston [14th Dist.] 2023, pet. filed). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant produces evidence sufficient to establish its right to summary judgment, the burden shifts to the plaintiff to come forward with competing controverting evidence raising a genuine issue of material fact. *Draughon v. Johnson*, 631 S.W.3d 81, 87-88 (Tex. 2021).

The parties agree that Flueraru's claim sounds in general maritime law. To prevail on a negligence claim brought under general maritime law, a plaintiff must establish (1) the existence of a duty owed by the shipowner or operator, (2) a breach of that duty, (3) proximate cause, and (4) injury and damages. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010); *Noble Drilling (US) Inc. v. Fountain*, 238 S.W.3d 432, 443-44 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

"Determination of a tortfeasor's duty is a question of law and thus a function of the court that we review *de novo*." *In re Signal Int'l, LLC*, 579 F.3d 478, 490

4

(5th Cir. 2009). Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances. *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980).

A stevedore is charged with the duty to perform its duties with reasonable safety and in a workman-like manner. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 170 (1981); *Johnson v. Warrior & Gulf Navigation Co.*, 516 F.2d 73, 76 (5th Cir. 1975). Specifically, "[u]nder an implied warranty of workmanlike performance, it is the stevedore's duty to perform its services properly and safely in the face of known defects." *Johnson*, 516 F.2d at 76.

A stevedore is not under an obligation to make an "intensive inspection" of the vessel upon which work is being performed; however, "once aware of the dangerous condition, the stevedore may not ignore it." *Id*.; *see also Brock v. Coral Drilling, Inc.*, 477 F.2d 211, 216 (5th Cir. 1973) ("If the stevedore has knowledge of a defect it should correct it or require it to be corrected by the ship's officers."). The stevedore's duty to perform with reasonable safety extends not only to the stowage and handling of cargo but also to the use of equipment incidental thereto. *Italia Societa per Azioni di Navigazione v. Or. Stevedoring Co.*, 376 U.S. 315, 319-20 (1964). Nonetheless, a stevedore is not responsible "for latent defects not discoverable by a reasonable, if only a cursory, inspection." *Scott v. SS Ciudad De Ibague*, 426 F.2d 1105, 1109 (5th Cir. 1970).

Authority from the Fifth Circuit illustrates these principles' application. *See Brock*, 477 F.2d at 216; *Burrage v. Flota Mercante Grancolombiana, S.A.*, 431 F.2d 1229, 1232-33 (5th Cir. 1970). In *Brock*, the Fifth Circuit concluded the evidence was sufficient to support finding that the stevedore breached its duty of workmanlike service when it proceeded to unload certain cargo even though it was aware that (1) sacks of drilling mud had shifted during transport and would need to

5

be restacked, (2) waves were running 6 to 12 feet high and washing over the vessel's stern, and (3) there was no immediate need to unload the cargo. 477 F.2d at 216. These factors, the court reasoned, contributed to the injuries the plaintiff suffered when he was backed into a pallet of sacked mud while trying to unload the cargo. *Id*. at 214, 217. Similarly, in *Burrage*, the evidence showed the stevedore breached its duty of workmanlike service when it failed to remedy a known coffee bean spillage that caused the plaintiff to slip and fall on the dock while unloading cargo. 431 F.2d at 1231, 1232-33.

Conversely, in *Scott*, the evidence did not show the stevedore breached its duty of workmanlike performance after "a number of heavy sacks" containing coffee beans fell on the plaintiff while he was unloading cargo. 426 F.2d at 1106, 1108-10. The sacks "appeared to be stacked in a normal manner" and "there was no apparent defect in their stowage"; they fell "completely without warning" and "for some unexplained reason." *Id*. at 1106. Noting that a stevedore "is not chargeable with knowledge of defects which are not discoverable by a reasonable, but cursory, inspection," the Fifth Circuit held that the stevedore was not liable for a latent defect of which it was not the creator and had no knowledge. *Id*. at 1109-10.

## II.    Application

Based on the summary judgment evidence,[2] the trial court did not err in

---

[2] For this analysis, we consider the 10 exhibits included with GSM's motion and the five exhibits filed with Flueraru's response.

GSM included an additional 14 exhibits with its summary judgment reply, which was filed five days before the hearing on its motion. Because the evidence attached to GSM's reply was not filed at least 21 days before the time specified for the hearing, the evidence could not be considered without leave of court. *See* Tex. R. Civ. P. 166a(c) (requiring summary judgment evidence to be filed at least 21 days before submission, except with leave of court). Nothing in the record indicates that GSM obtained leave of court to file additional evidence within five days of the hearing on its motion. Likewise, the language of the order granting summary judgment

granting GSM's traditional summary judgment motion. Specifically, the evidence does not raise an issue of fact regarding whether GSM breached its duty of workmanlike performance. *See* Tex. R. Civ. P. 166a(c); *Scindia Steam Navigation Co.*, 451 U.S. at 170; *Johnson*, 516 F.2d at 76.

In his summary judgment response, Flueraru asserted two theories to support his contention that GSM breached its duty of workmanlike performance: (1) GSM inappropriately placed certain cargo in Hold No. 3, blocking the Hold's floor-level entrance, and (2) GSM failed to inspect and report the ladder's hazardous condition before Flueraru's fall.

With respect to his first theory, Flueraru argued that, because the floor-level entrance was blocked, he chose to instead use the ladder entrance that caused his fall. But the summary judgment evidence does not raise an issue of fact regarding whether GSM's placement of the cargo in Hold No. 3 violated its duty to perform its obligations with reasonable safety. *See Johnson*, 516 F.2d at 76. GSM included with its summary judgment motion a declaration from Michael Mason, the port captain charged with designing the stowage plan for the M/V Industrial Crescent. According to Mason, the stowage plan "indicates to the stevedores (longshoremen) where the cargo needs to be loaded and placed onboard the vessel." The plan was approved by the vessel officers before its implementation.

With respect to the stowage plan, Mason averred that "[t]here was no discussion or issue regarding a second entry to the hold below winch #2, as ***the ladder was the designated means of entry and exit from the hold***." (emphasis

---

does not indicate the trial court considered the evidence filed with GSM's reply. Because the evidence attached to GSM's reply was filed without leave of court and nothing in the record indicates that it was considered by the trial court, we conclude that such evidence was not properly before the court at the time the summary judgment was signed. *See also, e.g., Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 612-21(Tex. App.—Houston [14th Dist.] 2009, pet. denied).

added).  Continuing on, Mason explained that, "[w]herever the cargo was placed in hold No. 3, it was done so with the final and prior approval of the vessel officers."

The parties also attached deposition testimony from Paul Simbakwira, GSM's gang foreman in charge of operations in Hold No. 3 at the time of Flueraru's incident.  According to Simbakwira, all GSM employees entered Hold No. 3 using the ship's ladder.  Simbakwira said the GSM employees placed the cargo in Hold No. 3 according to the stowage plan created by Mason.  Simbakwira did not recall a door at the bottom of Hold No. 3 and explained that it was the crew's job "to fill all of that hatch — to put the cargo right there."

To support his theory of liability, Flueraru points to deposition testimony from Jose Rivas, GSM's walking foreman at the time of the incident.  According to Rivas, the walking foreman is the "second person in charge of the vessel" who oversees the cargo operation.  Rivas agreed that it "would have been wrong to block" the floor-level entrance to Hold No. 3.  However, according to Rivas, if any cargo was blocking the floor-level entrance, "that would have been because the stowage plan dictated it."

Taken together, this evidence shows that (1) the ladder was the designated means of entry and exit for Hold No. 3, and (2) any blocking of the floor-level entrance was done in accordance with the stowage plan.  Therefore, the evidence does not show that blocking the floor-level entrance to Hold No. 3 breached GSM's duty to perform its job with reasonable safety.  *See id*. at 76.

The evidence also shows  all GSM employees used the ladder to enter Hold No. 3.  Thus, even assuming the cargo was improperly blocking the floor-level entrance, these circumstances did not create a "dangerous condition" that would breach GSM's duty to perform its job with reasonable safety.  *See id*.  Rather, this cargo configuration only necessitated using the ladder.  As this was the route

8

designated by the stowage plan and used throughout the day's operations by all GSM employees, it was not one that constituted a known dangerous condition breaching GSM's duty of workmanlike performance. *See id*. at 76.

Flueraru's second theory of liability asserts the ladder's dangerous condition should have been discovered and remedied by GSM. Describing the moments preceding his fall, Flueraru testified that, as he "was going down the ladder," he "could feel the handrails that were coming more towards [him] and [his] hands were slipping to the bottom." Continuing on, Flueraru said the handrails were "bending elastically towards" him. Flueraru said his hands "slipp[ed] off . . . through these openings where they've been cut off, these handrails."

But all other evidence regarding the ladder's condition prior to Flueraru's fall shows that the ladder had been used repeatedly without incident. Rivas said all GSM workers used the ladder to enter Hold No. 3 and no one complained about the ladder's condition. Similarly, Simbakwira testified that the ladder was used throughout GSM's day-long operation and was not broken.

Evidence also shows the ladder was used after Flueraru's fall without incident. Port captain Mason averred that, while he was investigating Flueraru's fall, he "went down into Hatch No. 3, using the same ladder, and had no problems descending to the hold." Simbakwira also said GSM employees exited Hold No. 3 after Flueraru's incident using the same ladder.

The responses to GSM's requests for admission completed by shipowners Hammonia Reederei GMBH & Co. KG and Peter Dohle Schiffahrts-KG also indicate GSM was not aware of or responsible for any defects in the ladder. In their responses, the shipowners admitted that their "investigation(s) did not conclude GSM was at fault in causing [Flueraru's] fall." The shipowners also admitted that their "investigation[s] did not conclude GSM was at fault in causing

9

any defect in the ladder." Photographs taken after Flueraru's fall show the gaps in the ladder's handrails (which were intended to accommodate a tweendeck) were subsequently filled in by the shipowners.

As discussed above, a stevedore is not responsible "for latent defects not discoverable by a reasonable, if only a cursory, inspection." *See Scott*, 426 F.2d at 1109; *see also id*. at 1108-10. Here, the evidence shows the ladder was used continuously throughout the day before Flueraru's fall. Even if the ladder had a "latent defect" that caused Flueraru's fall, it was not a defect apparent throughout the day's cargo loading operation. Therefore, GSM's failure to report the ladder's allegedly "hazardous condition" did not breach its duty of workmanlike performance. *Johnson*, 516 F.2d at 76.

Viewed in the light most favorable to Flueraru, the evidence does not raise a genuine issue of fact regarding whether GSM breached its duty of workmanlike performance in a manner that caused Flueraru's fall. Therefore, the trial court did not err in granting summary judgment on these grounds. We overrule Flueraru's sole issue on appeal.

## CONCLUSION

We affirm the trial court's May 30, 2023 summary judgment.

/s/    Meagan Hassan
           Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan.