Raymond H. MANNING, Appellant,

v.

M/V SEA ROAD, her engines, tackle, apparel, appurtenances, etc., et al.,
Appellees.

No. 22258.

United States Court of Appeals
Fifth Circuit.

Dec. 6, 1965.

On Rehearing April 20, 1966.

Arthur Roth, Miami, Fla., for appellant.

G. Morton Good, Miami, Fla., for appellees, Smathers & Thompson, Miami, Fla., of counsel.

Before JONES and BELL, Circuit Judges, and JOHNSON, District Judge.

GRIFFIN B. BELL, Circuit Judge.

Raymond Manning instituted an in rem libel against the M/V "Sea Road", a vessel owned by Sea Road Shipping Company, Inc., claimant in the District Court and an appellee here, for damages arising out of personal injuries sustained aboard

the vessel while in the employ of the claimant. The libel was based on unseaworthiness of the vessel and was brought under the admiralty and maritime jurisdiction of the court.

It was admitted on the trial, which was by the court without a jury, that the vessel was unseaworthy because of a defective manhole cover. It was claimant's position that Manning's injuries were caused by his sole negligence or in the alternative, that his negligence contributed to his injuries. It was Manning's position that the sole proximate cause of his injuries was the unseaworthy condition. Issue was joined on these contentions with the doctrine of comparative negligence being involved in the event warranted by the facts.

It appeared that Manning was employed by claimant as a general utility man at its docks and warehouses in Miami. The Claimant owned two vessels which were engaged in transporting cargo to the Bahamas. His duties included those of a longshoreman and supervisor or foreman over longshoremen. The vessel in question was a converted Navy assault landing craft from which a ramp is lowered to a dock with the cargo being driven into the hold for stowage. The deck of the vessel had several manhole type hatches leading into the water, fuel, and ballast tanks.

On the evening of September 19, 1963 between 6 and 7 o'clock, Smith, one of the longshoremen working under Manning stepped on one of the manhole hatch covers and it gave way with the result that he fell into the manhole. Manning denied knowledge of this accident but there was ample testimony that he knew of it, was present at the scene and participated in the discussion of repairs to be made with one of the two owners of claimant. The trial judge found as a fact that Manning knew of the accident and of the unseaworthy condition and this finding is not clearly erroneous.

It appeared that the same cover was placed over the manhole and work continued after Smith's accident while the owner who was present went to find a sheet of steel or plywood to effect temporary repairs. At about 8:00 P.M., and before the temporary repairs had been made and as loading continued, Manning was directing a fork lift truck into the hold. The truck was carrying a load of cement block and Manning was walking either beside or in front of it but in a backward direction so as to direct the truck into position when he stepped on the same defective manhole cover with the result that he fell and sustained the injuries which are the subject matter of the libel.

In spite of the concession that the vessel was unseaworthy by reason of the defective manhole cover, the District Court concluded that the negligence of Manning in failing to exercise due care for his own safety was the sole proximate cause of his injuries and entered judgment for the M/V "Sea Road". There was testimony that Manning stated just after falling into the manhole that he should have known better than to step on the cover since another man had fallen into the same manhole a little earlier.

The issue presented is whether the trial court erred in not assigning any portion of the fault for the accident to the unseaworthiness. An additional contention of Manning is that the court should not have found him guilty of any contributory negligence but this contention is without merit and further discussion of it would serve no useful purpose.

The contention that some of the fault should have been assigned to the vessel because of the unseaworthy condition is said to be supported by the fact of the violation of the safety and health regulations for longshoremen. Title 29, CFR, Subtitle A, Part 9, Subpart D, Working Surfaces, § 9.31(c).[1] This regulation

---

1. Title 29, CFR, Subtitle A, Part 9, Subpart D, Working Surfaces, § 9.31(c) provides:

"Missing, broken, split, or poorly fitting hatch covers that would jeopardize the safety of employees shall be reported at once to the officers in charge of the vessel. Pending replacement or repairs by the vessel, work shall not be performed in the section containing the unsafe covers or in adjacent sections unless the flooring is made safe."

provides that work should be stopped until an unseaworthy condition " * * * which would jeopardize the safety of employees * * * " can be alleviated and it is undisputed that the work here was not stopped. The condition was reported in that those in charge knew of it.

The contention that some or all of the fault should have been assigned to the vessel is also supported by the theory that the doctrine of assumption of the risk, in effect, was invoked against Manning rather than comparative negligence or proximate cause in that mere knowledge of unseaworthiness does not preclude recovery. Smith v. United States, 4 Cir., 1964, 336 F.2d 165.

It is not clear that the safety regulation was called to the attention of the District Court; however, we do not think that it precludes the decision of the court. It is not geared to a situation such as was presented here where the seaworthiness went only to a small portion of the vessel. The regulation calls for a work stoppage only when the unseaworthy condition would jeopardize the safety of employees. Here the work could go on provided the longshoremen steered clear of the defective cover. The regulation was not applicable under the facts presented.

We find no case to support the proposition that as a matter of law some or all fault may not be attributed to the injured employee where there is an unseaworthy condition. This is the sum of the assumption of risk argument which is asserted. Manning relies on Palermo v. Luckenbach S.S. Co., 1957, 335 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3; and Smith v. United States, supra, but neither so holds. Palermo was the other side of the coin to the present situation. There the court held in a case where the negligence of the employee was clear and an unseaworthy condition existed, that the employee was not precluded as a matter of law. The holding was that the District Court properly instructed that the longshoreman's negligence, if any, in choosing an unsafe passageway when a safe passageway was available was to be considered in mitigation of damages for personal injuries sustained. Thus a charge that he could not recover under such circumstances was not proper. In Smith, the use of a defective ladder by an employee with knowledge of the defect was held not to support a finding of contributory negligence. To so hold the court said would not differ in substance from invoking the doctrine of assumption of the risk against the longshoreman, something long proscribed. The Arizona v. Anelich, 1936, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075; Socony-Vacuum Oil Company v. Smith, 1938, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; and Movible Offshore Company v. Ousley, 5 Cir., 1965, 346 F.2d 870. However, Smith is distinguishable from the instant case in that there was no alternative safe route available and the court specifically noted that this might have given rise to a contributory negligence situation. Here there was a safe route available, and there was more than mere knowledge of the unseaworthy condition. The employee was a part of management and was supervising the loading operation, and it is a fair inference that he could have avoided the danger by discontinuing the work, relocating it, or going around the danger.

The question here turns on tort law. It is settled in maritime law that an employee's negligence may reduce his recovery of damages under the doctrine of comparative negligence. It is also settled that contributory negligence, no matter how gross, is not a complete bar to recovery but only mitigates damages. The Steamer Max Morris v. Curry, 1890, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; Socony-Vacuum Oil Company v. Smith, supra; Movible Offshore Company v. Ousley, supra; and Ahlgren v. Red Star Towing & Transportation Co., 2 Cir., 1954, 214 F.2d 618. But the ruling here in question goes to causation and we are not advised of any departure from the ordinary doctrine of proximate cause or causation for fault in maritime law. As this court said in Cenac Towing Company

v. Richmond, 5 Cir., 1959, 265 F.2d 466, a divided damages collision case:

"This does not mean that a somewhat blameworthy respondent must always be liable for his part of divided damages. Each case stands on its own. Call it anything: a condition, a remote cause, a non-contributing fault, the last clear chance; if, in the circumstances of the particular case, the respondent's fault is slight in comparison with the libellant's or if there was a clear cleavage between respondent's fault and the collision, an admiralty court will evaluate the respective degrees of fault and exonerate the respondent. That is just about what we said in The Suwanee, The Cherokee. [Crawford v. Indian Towing Company, 5 Cir., 1957, 240 F.2d 308] We reiterate it, here:

" 'Whether this be called an application of the doctrine of last clear chance or the rule of causation, makes little difference. Where, as here, an act is negligent, but is not the proximate cause of the injury it is merely a condition. As such it is not a basis of liability. P. Dougherty Co. v. United States, 3 Cir., 207 F.2d 626. * * * The damage to the Cherokee is attributable entirely to this gross fault on the part of her navigator.' "

We know of no reason why the causation doctrine should not apply to the facts here. The District Court held that the sole proximate cause of the injury was Manning's negligence. The unseaworthy condition of the ship was treated as a condition. We cannot hold this to be error on the facts of the case.

Affirmed.

## ON PETITION FOR REHEARING

■■ The petition for rehearing is granted in part. Among other grounds for rehearing urged by appellant is the contention that both the District Court and this court failed to give due weight to the Safety Regulation, Title 29, CFR, Subtitle A, Part 9, Subpart D, Working Surfaces, § 9.31(c), promulgated under The Longshoremen's Safety Act, 33 U.S.C.A. § 941(a). See Footnote 1 of original opinion for text of regulation.

We concluded in the original opinion that this Safety Regulation played a minor role, if any, in the trial. We deemed it inapplicable on the reasoning that the unseaworthiness in question applied to only a small portion of the vessel, and the work could have proceeded without jeopardizing the safety of the employees.

It is now agreed that the regulation was called to the attention of the District Court after the evidentiary hearing but prior to the entry of findings of fact and conclusions of law. There is no reference whatever to the regulation in the findings and conclusions. Moreover, upon further consideration of the documentary evidence, it is not clear that the work could have safely proceeded in spite of the defective manhole cover.

Proper judicial administration and the ends of justice under the circumstances dictate that the District Court should first make findings and conclusions on the applicability of the Safety Regulation, whether it was violated, and if so, its relation, if any, to the proximate cause of the injury sustained by appellant. The cause will be remanded so that this may be done. The District Court may do this on the present record, or in its discretion, on the present record and any other evidence that may be adduced on the question. See Peerless Insurance Company v. Bailey Mortgage Company, 5 Cir., 1965, 345 F.2d 14.

In all other respects the petition for rehearing is denied. The judgment of affirmance is vacated; the mandate is withdrawn; and upon rehearing the judgment of the District Court is vacated and the cause is remanded for further proceedings not inconsistent herewith.