**David Leroy WHITE, Plaintiff-Appellant,**

v.

**RIMROCK TIDELANDS, INC.,**
**Defendant-Appellee.**

**No. 26922**
**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

Aug. 1, 1969.

---

R. C. Edwins, Baton Rouge, La., for appellant.

Henry D. Salassi, Jr., Robert L. Kleinpeter, Kleinpeter & Salassi, Baton Rouge, La., for appellee.

Before JOHN R. BROWN, Chief Judge, THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This suit involves a claim under the Jones Act, 46 U.S.C.A. § 688, and under the general maritime law, for personal injuries allegedly suffered by the seaman White aboard shipowner Rimrock's submersible drilling barge with a

most unnautical, unromantic name, the Barge A.[1] Trial was held before the Court without a jury, and at the close of White's presentation of evidence, the Trial Judge granted Shipowner's Rule 41(b) motion [2] for involuntary dismissal. Pursuant to that Rule, the Judge made findings of fact and conclusions of law, holding that the Seaman had failed to show either negligence on the part of Shipowner or unseaworthiness of the Barge A. Moreover, in orally granting the motion to dismiss the Judge suggested that he found the seaman to be 100% contributorily negligent. We reverse and remand.[3]

On November 4, 1966, while working on Barge A, the Seaman sustained an accidental injury to his heel. He reported this injury to his superior, and an accident report was filed. This initial injury, though not the basis for the claim in this case, left an abraded spot on the Seaman's heel. The existing heel injury was then aggravated by a subsequent accident, which forms the basis of the present claim.

On November 21, 1966, Shipowner was preparing to move Barge A to a new drilling location. In preparation for the move, the Seaman was assigned the job of cleaning the drilling mud tank on the barge. To clean the tank, it was necessary to get inside it and wade in the drilling mud. It is uncontradicted that certain pressure jets used in stirring the mud in the tank were defective. Apparently, the failure of the pressure jets contributed in some degree to the settling of the mud, which made it necessary for men to enter the tank to clean out the remaining mud.

Before entering the tank, the Seaman was neither given safety equipment nor advised of the necessity for or the availability of any such equipment, like rubber boots, for use while cleaning the tank. As it developed, the drilling mud contained a caustic substance, which aggravated the existing injury to the Seaman's heel.

█ As to the Jones Act claim, we are of the firm view that the Seaman made out a sufficient claim of negligence on the part of Shipowner. To begin with, the oft-repeated principle apparently still bears repeating that "[t]he limits under the Jones Act, incorporating the FELA by reference, are broadly drawn and broadly construed. The employer may be held liable if his negligence 'played any part, even the slightest, in producing the injury or death for which damages are sought.'" Hampton v. Magnolia Towing Co., 5 Cir., 1964, 338 F.2d 303, 305, quoting Rogers v. Missouri Pa-

---

1. It is undisputed that White was a member of the crew, and that Barge A was, in fact, a vessel. *Cf.* Noble Drilling Corp. v. Smith, 5 Cir., 1969, 412 F.2d 952.

2. The Rule provides:
 (b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. F.R.Civ. P. 41(b).

3. Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804 (Part I).

cific R.R., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493. On the facts of this case, Shipowner is first charged with knowledge of the initial heel injury sustained by Seaman. Then, a short time later, Shipowner through a supervisor —in fact, the same one who filed the first accident report—ordered the Seaman to enter and clean the mud tank containing the caustic substance. Seaman was not warned of the possible danger in the substance or of the peculiar hazard to an unhealed wound. He was not given any protective equipment, such as rubber boots, nor, for that matter, was he given even simple advice about appropriate precautions. This conduct on Shipowner's part was clear negligence, for which the company must be held responsible. Since the Trial Judge found that Seaman's exposure to the caustic substance probably resulted in the aggravation of his existing injury,[4] the required causal connection is present.

■ We think that Seaman has likewise made out a claim under the general maritime law for unseaworthiness of the vessel. There is, of course, an absolute duty on Shipowner to furnish a vessel and appurtenances reasonably fit for their intended use. Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941; Mills v. Mitsubishi Shipping Co., 5 Cir., 1966, 358 F.2d 609, cert. denied, 1967, 386 U.S. 1036, 87 S. Ct. 1474, 18 L.Ed.2d 600. In this case the Seaman's evidence indicated that that duty had certainly been breached in one respect, and probably in a second.

■■ First, it is clear that the lack of adequate safety equipment aboard a vessel may constitute unseaworthiness. E. g., Moore v. O/S Fram, S.D.Tex., 1964, 226 F.Supp. 816, aff'd sub nom. Wilhelm Seafoods, Inc. v. Moore, 5 Cir., 1964, 328 F.2d 868; cf. Walker v. Harris, 5 Cir., 1964, 335 F.2d 185, cert. denied, 379 U.S. 930, 85 S.Ct. 326, 13 L. Ed.2d 342. In this case, the lack of rubber boots or other safety equipment for use by the seamen directed to enter the tank containing caustic drilling mud amounted to unseaworthiness. The fact that safety equipment may not have been provided by other drillers in the business is not controlling.[5] For, as we have said before, "[w]hat is customary in a trade may be evidence of due care —here the reasonable fitness element on the concept of seaworthiness—but it is not the legal measure of the duty." June T, Inc. v. King, 5 Cir., 1961, 290 F.2d 404, 406. See also Stevens v. Sea Coast Co., 5 Cir., 1969, 414 F.2d 1032, 1039 and cases cited therein [No. 26852, Aug. 13, 1969].

■ Second, as we have previously noted, some of Barge A's appliances— the pressure jets used to stir the mud —were defective and had been in that condition for some time. The inoperative jets evidently contributed at least in part to the settling of a substantial amount of mud. This in turn necessitated the Seaman's entry into the tank.[6] Thus the defective appliances, too, constitute a probable source of unseaworthiness.

■ Furthermore, on this record we do not think the Seaman can be considered contributorily negligent to any extent, whether 1% or 100%. Even though the Seaman had worked around

---

4. In his findings the District Judge stated that "it [was] highly probable that the plaintiff did have an abraded area on his heel, and that some of the caustic substance in the mud which he was trying to remove from the tank probably caused a chemical burn of his heel."

5. Although the Trial Judge evidently believed that industry-wide practice did not encompass safety boots, the record is unclear on this question.

6. Although there is some suggestion in the record that entry into the tank would have been required even if the jets had been functioning, the amount of mud remaining to be cleaned might have been reduced by operative appliances. And, with less mud remaining, the Seaman might not have sustained this injury, or perhaps its severity could have been reduced.

mud and seen the tank cleaned before, there is no evidence that he had ever contacted any of the caustic materials in an open wound or knew the hazards of the substance. Moreover, he had noticed no appreciable injury to other employees who had cleaned the tank previously, and thus there was no basis for considering him imprudent in entering the tank without protesting to his superiors. To cap it off, he was not warned of any potential danger by his superior who ordered him into the tank. *Cf.* Davis v. Parkhill-Goodloe Co., 5 Cir., 1962, 302 F.2d 489. We hold the finding of contributory negligence to be clearly erroneous.

■ The upshot of all this is that the District Court's decision to grant the F. R.Civ.P. 41(b) motion to dismiss must be reversed. Because the dismissal under Rule 41(b) was made at the close of the plaintiff's evidence, the action must be remanded for further proceedings to allow the defendant to present his case. *See, e.g.,* Criscuolo v. United States, 7 Cir., 1957, 250 F.2d 388. See generally 2B W. Barron & A. Holtzoff, Federal Practice and Procedure § 924, at 170 (C. Wright ed. 1961); 5 J. Moore, Federal Practice ¶ 41.13[2], at 1152–53 (2d ed. 1968).

■ From an administrative standpoint, this process of disposition under F.R.Civ.P. 41(b) is patently unsatisfactory. There has been a partial trial, followed by an appeal and reversal. There must now be a second trial, or at least another partial trial,[7] and still more appellate consideration may be sought in the future. In this short, uncomplicated case it would have been a simple matter indeed for the District Court to carry the defendant's Rule 41(b) motion with

the case, let the defendant put on his evidence, and enter final judgment at the close of the evidence.[8] Not much time would have been lost, and if one or both of the parties had sought appellate review, the entire case would have come before this Court at one time rather than in piecemeal fashion.

Reversed and remanded.

---

7. Since the case was tried without a jury, there is no reason for the District Judge to compel the plaintiff to offer his evidence a second time. Thus he need hear only the defendant's evidence. See Gulbenkian v. Gulbenkian, 2 Cir., 1945, 147 F.2d 173, 158 A.L.R. 990. Of course, this will not prevent the plaintiff from supplementing the present record by other-

wise admissible relevant evidence either in chief or rebuttal.

8. This is somewhat analogous to the procedure often adopted in jury cases when the defendant moves for a directed verdict at the close of the plaintiff's case. See Leckbee v. Continental Airlines, 5 Cir., 1969, 410 F.2d 1191, 1195 n. 8.