James L. JOHNSON, Plaintiff-Appellee,

v.

**WARRIOR & GULF NAVIGATION COMPANY, Defendant-Third-Party-Plaintiff-Appellant,**

v.

**PLITT & COMPANY, STEVEDORES, Third-Party-Defendant-Appellee.**

No. 74–2320.

United States Court of Appeals, Fifth Circuit.

July 16, 1975.

Rehearing Denied Oct. 30, 1975.

Benjamin S. Hardy, Brownsville, Tex., Broox G. Holmes, Mobile, Ala., for defendant-third-party-plaintiff-appellant.

Arthur L. Schechter, Houston, Tex., for J. J. Johnson.

Marshall W. Graham, Harlingen, Tex., for Plitt & Company, Stevedores.

Before GOLDBERG and RONEY, Circuit Judges, and LYNNE, District Judge.

RONEY, Circuit Judge:

This appeal arises out of a longshoreman vs. shipowner vs. stevedore dispute.[1] The longshoreman, injured while unloading improperly stowed cargo, recovered against the shipowner for unseaworthiness, although his award was reduced by 30% because of his contributory negligence. The shipowner was denied recovery against the stevedore on its breach of warranty of workmanlike performance claim. We affirm the longshoreman's award, but reverse as to the shipowner's claim against the stevedore on the ground that the district court was in error in finding no breach by the stevedore of the warranty of workmanlike performance owed to the shipowner.

---

1. This type of admiralty litigation is a vanishing breed. The 1972 amendments to the Longshoremen and Harbor Workers Act, 33 U.S. C.A. § 901 et seq., effective November 1972, now limit the longshoreman's right to sue a shipowner to claims based solely upon the shipowner's negligence. The amendments thereby abolish the longshoreman's right to recovery under the doctrine of unseaworthiness and the shipowner's concomitant right to seek indemnification from the stevedore. The amendments further provide that the steve-

dore shall not be held liable to the shipowner for damages paid by the shipowner to longshoremen and any warranties to the contrary shall be void. 33 U.S.C.A.§ 905(b). Miller v. Royal Netherlands Steamship Co., 508 F.2d 1103 (5th Cir. 1975); accord, McCawley v. Ozeanosun Compania, Maritime, S. A., 505 F.2d 26 (5th Cir. 1974); Julian v. Mitsui O.S.K. Lines, Ltd., 479 F.2d 432 (5th Cir.), cert. denied, 414 U.S. 1093, 94 S.Ct. 725, 38 L.Ed.2d 557 (1973).

James L. Johnson, a longshoreman employed by Plitt and Company, Stevedores, was injured while working on a barge owned by Warrior and Gulf Navigation Company. These are the facts leading up to the accident.

After a seventeen day voyage from Birmingport, Alabama, Shipowner's Barge WGN–50 arrived at dock in Brownsville, Texas, on April 25, 1972, with a cargo of railroad rails. The WGN–50 was an unmanned, open, dumb barge, 195 feet long by 35 feet wide. The railroad rails were approximately 39 feet long and weighed about 1500 pounds each, and were loaded lengthwise in the barge in three stacks of six tiers each. Each stack of rails was approximately seven feet high.

On the arrival of the barge, Stevedore inspected the WGN–50 and the condition of its stow. Stevedore found that some of the dunnage was broken and that some of the stow was uneven. After reporting the condition of the stow to the consignee, United States Steel, International, and discussing the situation with the union leaders of the Longshoremen's Local, Stevedore began discharge of the WGN–50 on April 26.

Supplying the necessary equipment, Stevedore unloaded the rails from the barge into gondola rail cars for further shipment to the Republic of Mexico-National Railroad. The Mexican Railroad had instructed Stevedore to load the rails in the gondolas "laced in," one up and one down. In order so to load the rails, Stevedore at times found it necessary to roll or flip a rail over to get it up or down. Stevedore turned the rails over by the use of a hand tool known as a "flipping bar" which Stevedore provided. After a rail was in position, Stevedore lifted the rail out of the barge by a crane with hooks on a cable.

On April 27, Johnson was working on the barge as a longshoreman for Stevedore. At the time of his accident that day, Johnson was standing on the middle stack of rails and was in the process of turning a rail with his flipping bar when the rail flipped back and Johnson slipped. The flipping bar failed to slip loose from the rail and Johnson, neglecting to release the tool, was carried into the bottom of the barge. Johnson fell about five feet and sustained serious injuries. When the accident occurred, Johnson was wearing Hush Puppy shoes and was working with a flipping bar which had a short handle instead of a long one.

On these facts following a nonjury trial, the district court found (1) that the barge was unseaworthy because of the improper stowage, (2) that such unseaworthiness was a proximate cause of Johnson's injury because he would not have been frequently using the flipping bar but for the improper stowage, (3) that Johnson was 30% contributorily negligent for wearing Hush Puppy shoes and failing to release the flipping bar, and (4) that Stevedore had performed its duties in a reasonably safe and workmanlike manner. The district court rendered a judgment reduced by 30% for Johnson against Shipowner. The court held that Shipowner was not entitled to indemnity.

Although Shipowner challenges the district court's finding of unseaworthiness on appeal, unseaworthiness is a question of fact and our review of such a finding is narrowly proscribed by F.R. Civ.P. 52(a). A careful study of the record reveals ample evidence to support a finding that Barge WGN–50 was unseaworthy when it arrived in port on April 25. It is without dispute that some of the dunnage on the barge was broken and that some of the stow was uneven. The cases are legion which hold improper stowage to be unseaworthiness which can be the proximate cause of injuries received in work connected with the stowage. See Compania Anonima Venezolano de Navegacion v. Matthews, 371 F.2d 971 (5th Cir.), cert. denied, 389 U.S. 820, 88 S.Ct. 37, 19 L.Ed.2d 71 (1967); Strachan Shipping Co. v. Alexander, 311 F.2d 385 (5th Cir. 1962); Reddick v. McAllister Lighterage Line, Inc., 258 F.2d 297 (2nd Cir. 1958); Gindville v. American-Hawaiian Steamship Co., 224

F.2d 746 (3rd Cir. 1955); Hopson v. M/V Karl Grammerstorf, 330 F.Supp. 1260 (E.D.La.1971).

Shipowner's third party claim against Stevedore is, however, more difficult. Shipowner argues that a finding of workmanlike performance is clearly erroneous where the longshoreman was contributorily negligent and where Stevedore failed to provide its employees with proper equipment. In response, Stevedore asserts that it performed its duties in a workmanlike manner in light of the unseaworthy condition of the barge. Stevedore further contends that the contributory negligence of a longshoreman is only one factor to be considered by the court in deciding whether Stevedore has breached its implied warranty of workmanlike performance.

■■■■ A warranty of workmanlike performance consists of the contractual obligation to perform duties under a contract with reasonable safety. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). The shipowner and the stevedore are under reciprocal obligations: the shipowner to provide a seaworthy vessel and to refrain from hindering performance by the stevedore and the stevedore to perform its duties with reasonable safety. Garner v. Cities Service Tankers Corp., 456 F.2d 476 (5th Cir. 1972); Waterman Steamship Corp. v. David, 353 F.2d 660 (5th Cir. 1965), cert. denied, 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683 (1966).

■■■■ In the case at bar, Shipowner breached its obligation to provide Stevedore with a seaworthy vessel. Where a shipowner breaches its obligation to provide a seaworthy vessel, however, such a breach does not provide a license for a stevedore to ignore the consequences of its own actions. Brock v. Coral Drilling, Inc., 477 F.2d 211 (5th Cir. 1973). Although a stevedore is not under an obligation to make an intensive inspection of the vessel, once aware of the dangerous condition, the stevedore may not ignore it. D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966), cert. denied, 400 U.S.

902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970). Under an implied warranty of workmanlike performance, it is the stevedore's duty to perform its services properly and safely in the face of known defects. Burrage v. Flota Mercante Grancolombiana, 431 F.2d 1229 (5th Cir. 1970).

In the cases of Brock v. Coral Drilling, Inc., *supra*, and Burrage v. Flota Mercante Grancolombiana, *supra*, this Court permitted the shipowner to recover against the stevedore despite the fact that the shipowner had breached its duty to furnish a seaworthy vessel. In the *Brock* case, the stevedore knew that sacks of drilling gel were improperly stowed and that waves running 6 to 12 feet high were washing over the stern of the vessel. Disregarding these adverse conditions, the stevedore in *Brock* proceeded to discharge the vessel and a longshoreman was injured in the process. This Court held that the stevedore's actions in *Brock* brought into play the unseaworthy condition of the vessel and constituted a breach of stevedore's warranty of workmanlike service.

The facts of the *Burrage* case are similar to those in the case at bar. While the vessel was being unloaded in *Burrage*, some coffee beans were spilled on the wharf, creating an unseaworthy condition. The stevedore, with knowledge of the dangerous condition of the wharf, began to discharge the cargo other than bagged coffee. A longshoreman slipped on a coffee bean and injured his back. Holding that the stevedore had breached its warranty of workmanlike performance by failing to clean up the coffee beans, this Court stated in *Burrage*,

> The notion of workmanlike performance certainly encompasses an obligation by the contractor to take notice of those deficiencies and hazards likely to give rise to damage to life, limb, or property and then take requisite action depending on the nature of the relationship of the parties and their contractual obligations, express or implied, either to eliminate or minimize the hazard or to stop work until the situation is corrected.

431 F.2d at 1232.

■ In the case *sub judice*, Stevedore was aware of the unseaworthy condition of Barge WGN–50. Because the barge was unmanned at the time of discharge, Stevedore was the party best situated to adopt preventative measures and thereby reduce the likelihood of injury. *See generally* Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); McCawley v. Ozeanosun Compania, Maritime, S.A., 505 F.2d 26 (5th Cir. 1974); Olin Mathieson Chemical Corp. v. United Stevedoring Division, States Marine Lines, Inc., 317 F.Supp. 1373 (S.D. Tex.1969), aff'd per curiam, 432 F.2d 1234 (5th Cir. 1970). The record reveals, however, that Stevedore, with knowledge of the broken dunnage and uneven stow, supplied Johnson with an improper flipping bar and that Johnson himself was negligent in wearing Hush Puppy shoes and in failing to release the tool when the rail began to slip. It was Stevedore's obligation to furnish Johnson with proper shoes.

The finding of the district court on the failure of Stevedore to supply Johnson with a suitable flipping bar is worded somewhat confusingly. The district court stated,

> I find that contributing to this accident was the fact that he had been furnished a turning tool that had the short handle instead of the long handle, but that under the facts this accident would have happened whether he was using the long handle or the small handle. So really and truly I don't know whether that has any bearing on the outcome of this case. But he was given the tool that had too short a handle for him to do the work that was required of him turning these rails.

After a careful review of the record, we read this finding to mean that a turning tool with a long handle would have been easier and safer for Johnson to use in flipping the rails than a tool with a short handle, and that the failure of Stevedore to supply Johnson with a proper tool was a contributing factor to Johnson's accident.

We conclude, therefore, the Stevedore breached its implied warranty of workmanlike performance by failing to minimize the hazardous condition of Barge WGN–50. In light of Stevedore's failure to equip its longshoreman properly and its longshoreman's own negligence, we hold that the district court's finding that Stevedore performed its duties in a workmanlike manner is clearly erroneous.

■■ Stevedore's argument that the contributory negligence of a longshoreman is only one factor to be considered by a court in deciding whether a stevedore has breached its implied warranty of workmanlike performance is well taken. This Circuit follows the so-called "factor" rule and rejects the "per se" rule under which the contributory negligence of a longshoreman is imputed to the stevedore and constitutes a breach of the stevedore's warranty as a matter of law. Julian v. Mitsui O.S.K. Lines, Ltd., 479 F.2d 432 (5th Cir.), cert. denied, 414 U.S. 1093, 94 S.Ct. 725, 38 L.Ed.2d 557 (1973). In the case at bar, however, the fact of Johnson's contributory negligence, which the district court found to be a substantial 30%, does not stand as the sole evidence of Stevedore's breach of its implied warranty of workmanlike performance. The district court found that Stevedore should have supplied Johnson with a flipping bar with a long handle and that such omission was a contributing factor to the accident. These facts together establish that Stevedore did not perform its duties in a reasonably safe and workmanlike manner.

Having determined that Stevedore breached its implied warranty of workmanlike performance, we turn to consider whether that breach proximately caused the injury in question. *See* Garner v. Cities Service Tankers Corp., 456 F.2d 476 (5th Cir. 1972). The district court found as a matter of fact that the unseaworthiness of the barge was a proximate cause of Johnson's injury. A thorough review of the record, however, convinces this Court that Stevedore's failure to perform its duties in a work-

manlike manner brought the unseaworthiness of the barge into play.

 On April 27, the day of Johnson's accident, some of the dunnage on Barge WGN–50 was broken and some of the stow was uneven. As a direct result of the condition of the stow, Stevedore had to make greater use of flipping bars than would have been necessary had the rails been stowed properly. In any case, however, it would have been necessary for Stevedore occasionally to use flipping bars to position the rails for placement in the gondolas. At the moment of the accident, Johnson was in the process of flipping a rail which was stowed unevenly. This fact is the single connection between the unseaworthiness of the barge and Johnson's subsequent injury. There is no evidence that Johnson tripped over any broken dunnage; rather, the facts indicate that Johnson, wearing improper work shoes, lost his footing and was carried over into the bottom of the barge by the torque of the 1500 pound rail when he failed to release the flipping bar. It follows, therefore, that the proximate cause of Johnson's mishap was not only the unseaworthiness of Barge WGN–50, but also Stevedore's breach of its implied warranty of workmanlike performance which acted upon the unseaworthiness of the barge to bring about the accident.

In Garner v. Cities Service Tankers Corp., 456 F.2d 476, 481 (5th Cir. 1972), this Court stated,

> The determination of whether contractual indemnity should be allowed involves a weighing process evaluating the conduct of both parties to determine: (1) whether the warranty of workmanlike performance was breached; (2) whether that breach proximately caused the injury; and (3) whether the shipowner's conduct prevented the workmanlike performance. *David*, 353 F.2d 666; Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd., 388 F.2d 267, 271–272 (5th Cir. 1968).

456 F.2d at 481. In the case *sub judice*, we have determined that Stevedore breached its warranty and that such breach was a proximate cause of Johnson's injury. Stevedore does not assert that Shipowner's conduct prevented Stevedore from performing its services in a workmanlike manner. Accordingly, we reverse the decision of the district court insofar as it denies Shipowner's third party claim against Stevedore for indemnity and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.