Everett C. WEBB, Plaintiff-Appellee,

v.

**DRESSER INDUSTRIES,
Defendant-Appellant.**

**No. 74–4220.**

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1976.

Rehearing and Rehearing En Banc
Denied Sept. 29, 1976.

F. E. Billings, Houston, Tex., for defendant-appellant.

Gus Kolius, Richard W. Mithoff, Jr., Joseph D. Jamail, Houston, Tex., for plaintiff-appellee.

Before GEWIN, COLEMAN and GOLD-BERG, Circuit Judges.

GOLDBERG, Circuit Judge:

Dresser Industries appeals from a $40,000 district court judgment in favor of plaintiff-appellee Everett C. Webb, a seaman on Dresser's vessel the M/V CANADIAN OLYMPIC. Webb, claiming that he received injuries as a result of defendant's negligence and breach of its warranty of seaworthiness, brought this action pursuant to the Jones Act, 46 U.S.C. § 688 *et seq.,* and general maritime law. The controversy was tried without a jury. The trial judge found both negligence and unseaworthiness and rendered a verdict for the plaintiff. Appellant Dresser Industries asserts that the court erred in 1) finding negligence and unseaworthiness; 2) failing to hold that plaintiff Webb was negligent; 3) denying Dresser's motion for a continuance; and 4) calculating Webb's lost earnings. After careful consideration of these claims, we hold that except for the absence of a finding with respect to Webb's contributory fault, the judgment of the district court was proper. Therefore, we remand

this cause to that court for consideration of the issue of plaintiff's negligence.

## I. Facts

Everett C. Webb served as a member of the crew [1] of the M/V CANADIAN OLYMPIC, a 199 ton vessel involved in oceanic surveying. Prior to the accident from which this suit arose, the ship was docked at Seward, Alaska, for outfitting for Alaskan operations. Plaintiff had been aboard the moored boat for approximately two weeks when supplies from Anchorage arrived at the Seward bus station. The district court found that the M/V CANADIAN OLYMPIC's party-chief, David Colten, who was in administrative control of the vessel and who had responsibility for all operations including supplies and safety equipment, "order[ed] plaintiff to go ashore to pick up supplies." Webb and two other members of the crew went into town to get the ship's provisions at the local bus station. Because it was wintertime, significant amounts of snow and ice had accumulated in Seward making walking conditions very hazardous. While checking off the supplies being loaded into the crew's truck, plaintiff slipped on the snow and ice, sustaining the injuries for which damages were awarded by the district court.

At trial, Webb argued that the failure of Dresser Industries to provide him with proper footwear for journeying ashore in the ice and snow in the course of his duties as a seaman rendered the M/V CANADI-AN OLYMPIC unseaworthy and constituted negligence under the Jones Act. He testified that he had realized that his clothing was inadequate. At the time of the fall, he was wearing the smooth soled boots that he had used in the tropics. He stated, however, that on three different occasions he had told his superior, Mr. Colten, about his need for proper boots. According to Webb, Colten had indicated "that he would try to get them, in a very noncommittal way . . . ." Colten testified that he could not recall any such request.

The court also heard statements to the effect that an individual wearing smooth soled shoes like plaintiff's would not be "properly rigged" for working on snow and ice and that wearing such shoes in the Alaskan winter was dangerous. A safety expert testified that another type of available boot, presented to the court by the plaintiff's attorney, would have been a definite aid to one working on snow and ice and would have eased the difficulty of ambulating on such surfaces.[2]

After hearing the evidence, the district court judge filed his findings of fact. He determined that plaintiff was injured while "working in the course and scope of his employment."[3] He observed:

> At the time of and prior to the date of plaintiff's injury, . . . Mr. Colten, the party chief, was aware of the very hazardous walking conditions in and around Seward, Alaska. Nevertheless,

---

**1.** The M/V CANADIAN OLYMPIC's crew included the party chief, captain, mate, engineer, deckhand, and cook as well as the scientific party charged with seismic research. Webb regularly served as the mate, but at the time of the accident he had become acting captain because of the temporary absence of the regular captain, who was on vacation.

**2.** There was also testimony that Dresser provided special wet weather gear including boots for the scientific crew. It was stated, however, that it was not customary for the boat to carry boots and other cold weather gear for crew members going ashore in the course of their duties as seamen and also that the equipment supplied to the scientific crew was not satisfactory for shore tasks performed on snow and ice.

**3.** On appeal, Dresser Industries does not challenge Webb's contention that when he went to the bus station he was a seaman, acting on behalf of the ship. Nor does appellant dispute the district court's conclusion that Webb falls within the scope of coverage provided by both the Jones Act and the general maritime law. Moreover, no special problems as to the scope of the maritime law are presented by the fact that the injuries sustained here actually occurred on land, and defendant makes no such contentions. See 46 U.S.C. § 740; Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943); See generally M. Norris, The Law of Maritime Personal Injuries § 310 (3 ed. 1975).

the defendant, Dresser Industries, Inc., did not provide any kind of special boots or shoes for members of the crew to use in cold weather and to enable them to better walk on the slippery surfaces ashore, nor did Mr. Colten take any steps to requisition such special boots or shoes.

.        .        .        .        .

At the time of his injury, plaintiff was subject to all orders given by Mr. Colten and was responsible for seeing that supplies were picked up from the bus station and loaded aboard the vessel.

On the basis of these findings, the court found the defendant negligent for failing to provide plaintiff a safe place to work and for violating the slop chest statute, 46 U.S.C. § 670, which requires that certain vessels carry clothing for sale to seamen. With respect to the claim of unseaworthiness, the court said:

> The failure of defendant, Dresser Industries, Inc., to provide plaintiff with special boots or shoes to use in cold weather and to enable him to better walk on icy or other slippery surfaces and other proper and adequate clothing, tools, devices, appliances and appurtenances, that would have afforded the plaintiff the opportunity of performing his duties in a safe manner, rendered the vessel, "THE CANADIAN OLYMPIC," unseaworthy.

With these findings before us, we turn to the legal issues raised by this appeal.

## II. THE LEGAL ISSUES

### A. The Standard of Review

■ The district court's resolution of the questions of seaworthiness and negligence are considered findings of fact. *See, e. g., McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 7–8, 99 L.Ed.2d 20, 24 (1954); *See* M. Norris, *The Law of Maritime Personal Injuries* §§ 131, 265, 314 (3d 1975); *See generally* C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2585

(1971). As such, these determinations are to be overturned by an appeals court only if they are clearly erroneous. *Id;* Rule 52(a), Fed.R.Civ.P.

### B. Seaworthiness

■ Under admiralty law, an absolute and non-delegable duty is imposed on the shipowner to furnish a vessel reasonably safe and fit for its intended purpose. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941; *White v. Rimrock Tidelands, Inc.,* 5 Cir. 1969, 414 F.2d 1336; *see generally* Norris, *supra* §§ 298 *et seq.* This obligation includes the duty to provide necessary appliances, gear, and equipment. *See, e. g., Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); *see generally* Norris, *supra* §§ 301, 305.[4]

■ In *Walker v. Harris,* 5 Cir. 1964, 335 F.2d 185, Chief Judge Brown set forth the subsidiary questions leading to the ultimate conclusion of seaworthiness *vel non*:

> "[W]hat is the vessel to do? What are the hazards, the perils, the forces likely to be incurred? Is the vessel or the particular fitting under scrutiny, sufficient to withstand those anticipated forces?"

*Id.* at 191. In reference to the questions posed in *Walker,* it is clear that an integral part of the M/V CANADIAN OLYMPIC's maintenance and thus its ability to perform its Alaskan functions included the movement of provisions from shore to sea. The defendant, through its agent Colten, was fully aware of the need for such land missions. According to the district court, Colten directly ordered the plaintiff to take charge of the particular chore in question here. Moreover, Colten knew that the ice and snow, which one would reasonably expect to encounter ashore in the Alaskan winter, presented difficult and dangerous environmental conditions. He also knew or could easily have anticipated that special winter boots not available on the M/V CANADIAN OLYMPIC were necessary to

---

4. The shipowner's duty to maintain a seaworthy ship is absolute and a cause of action for breach of that duty "arises even though the unseaworthy condition was unknown to the owner." Norris, *supra* § 301 at 10.

carry out the boat's errands safely in such conditions. These factors, when analyzed in the context of the *Walker* criteria, lead us to the conclusion that the district court was not clearly erroneous in finding unseaworthiness.

Defendant, however, calls to our attention testimony to the effect that crew members traditionally have furnished their own clothing. The importance of this custom, if it be such, is undercut in the case before us by the fact that Dresser admittedly made available to the scientific crew wet weather gear including boots. *See* note 2 *supra*. More importantly, it has long been held that the determination of reasonable fitness is not limited by custom. *E. g., White v. Rimrock Tidelands, Inc.,* 5 Cir. 1969, 414 F.2d 1336, 1339 (the fact that safety equipment, particularly protective boots, may not have been provided by other drillers is not controlling); *Bryant v. Partenreederei-Ernest Russ,* 4 Cir. 1974, 330 F.2d 185. In view of the "awesome obligations of seaworthiness," *Saunders v. Pool Shipping Co.,* 5 Cir. 1956, 235 F.2d 729, 730; *see* Norris, *supra* § 298; *see also, Cox v. Esso Shipping Co.,* 5 Cir. 1957, 247 F.2d 629, 636 (shipowner's "heavy obligation to provide seaworthy equipment") and the less than controlling significance of custom, we find on the record before us that the district court did not err in refusing to permit the testified-to custom set the outer limits of defendant's duties.

Thus, after careful scrutiny of the trial court proceedings, we have decided to affirm the district court's seaworthiness conclusion. The judge below obviously credited much of seaman Webb's testimony, particularly with respect to the circumstances of the accident. Given this factual background, and the above analysis, we do not find incorrect the lower court's determination that with the M/V CANADIAN OLYMPIC docked at a port where much ice and snow covered the ground, proper footgear should have been made available to

plaintiff. *See, White v. Rimrock Tidelands, supra* (allegation that defendant shipowner did not provide protective boots or other safety equipment to seaman directed to enter tank containing caustic drilling mud stated a claim for unseaworthiness); *cf. Johnson v. Warrior & Gulf Navigation Co.,* 5 Cir. 1975, 516 F.2d 73 (finding stevedore's obligation to furnish longshoreman with proper shoes).

In affirming the lower court's conclusion of unseaworthiness, we are not creating a general duty of a shipowner to provide all of its seamen with boots adequate for all foreseeable shore duties. Instead, the defendant need make boots available only for those crew members ordered to work under foreseeably adverse circumstances. Alternatively, the defendant can protect itself by sending ashore only those seamen who it has ascertained have the necessary footwear whether that footwear is provided by the shipowner or the sailor.

## C. Negligence

The district court found as an alternative theory in support of its verdict that the plaintiff should recover under the Jones Act, 46 U.S.C. §§ 688 *et seq.* The basis of the court's decision was its determination that the defendant 1) negligently failed to maintain a safe place to work and 2) violated a safety statute, thus requiring a finding of negligence *per se.* Having affirmed the lower court's decision that the M/V CANADIAN OLYMPIC was unseaworthy, we need not rely on the district court's alternative Jones Act theories, and therefore, we pretermit any discussion of the negligence issue.[5]

## D. Comparative Negligence

The trial court made no finding as to whether or not the plaintiff's own negligence legally contributed to his injuries. In the circumstances of this case, we think that this failure was error necessitating that we vacate the lower court's judgment

---

**5.** Defendant contends *inter alia* that 46 U.S.C. §§ 441–445 pertaining to oceanographic research vessels precludes application of the slop chest statutes the M/V OLYMPIC. We need not reach this issue, however, in view of our disposition above.

and remand the cause for consideration of the issue of Webb's negligence.[6]

▮ Neither assumption of risk nor contributory negligence is a bar to a seaman's recovery under either the doctrine of seaworthiness or the Jones Act. 45 U.S.C. § 53; *The Max Morris v. Curry,* 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586 (1890); *The Arizona v. Anelich,* 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936); *Beadle v. Spencer,* 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082 (1936); *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); *Klimaszeuski v. Pacific-Atlantic Steamship Co.,* 3 Cir. 1957, 246 F.2d 875; *Manning v. M/V Sea Road,* 5 Cir. 1965, 358 F.2d 615; *Britt v. Corporacion Peruna de Vespores,* 5 Cir. 1975, 506 F.2d 927; *see generally* Norris, *supra* at §§ 311–13. When the plaintiff has been negligent, however, the damages otherwise awardable are mitigated in accordance with the doctrine of comparative negligence. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *Socony-Vacuum Oil Co. v. Smith, supra; Stein v. Sea-Land Services, Inc.,* 5 Cir. 1971, 440 F.2d 1181; *Manning v. M/V Sea Road, supra; Cox v. Esso Shipping Co.,* 5 Cir. 1957, 247 F.2d 629.

Appellant argues that plaintiff was negligent because he made no attempt to obtain proper gear from any Seward stores—this notwithstanding his obvious knowledge of the danger from the snow and ice and his clear opportunity to make such a purchase. Appellant also contends that Webb exposed himself to the snow and ice in a manner not required by his duty to pick up supplies at the bus station—in other words, there were safer alternative means of carrying out the party-chief's order. Specifically, appellant claims that in following the defendant's orders it was not necessary for plaintiff, whose testimony clearly indicates that he understood the snow/ice hazard, to take inventory on the obviously dangerous bus lot. Moreover, Dresser contends that plaintiff's manner of walking on the ice, with his hands in his pockets, was a primary cause of his injuries.

Because of the peculiar risks and dangers as well as the rigorous discipline and obligation to follow orders which are integral parts of their profession, seamen are traditionally given special attention by the federal courts.

> [S]eamen are the wards of the admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances attending their calling.

*Socony-Vacuum Oil Co. v. Smith,* 305 U.S. at 431, 59 S.Ct. at 266, 83 L.Ed. at 270. *See also Spinks v. Chevron Oil Co.,* 5 Cir. 1975, 507 F.2d 216, 223. Notwithstanding this heightened solicitude for sailors, the use of unsafe equipment and methods in the face of an available safe alternative, *see Socony-Vacuum Oil Co. v. Smith, supra,* 305 U.S. at 432, 59 S.Ct. at 267, 83 L.Ed. at 271; *Manning v. M/V Sea Road,* 5 Cir. 1965, 358 F.2d 615; or the failure to take available action to minimize the dangers in a necessarily risky, course of action, *see Superior Oil Co. v. Trahan,* 5 Cir. 1963, 322 F.2d 234, requires a finding of comparative fault and consequently mitigation of damages.

Assuming that Webb informed Colten of his need for boots and justifiably relied on Colten to procure the necessary shoes, then we would be reluctant to sanction a finding that plaintiff was negligent in not going into Seward to look for footwear. A finding of comparative fault for this reason would tend to undermine the boatowner's duty as affirmed in this opinion and would be contrary to the special position of the seaman in admiralty law. However, we do not conclude that there are never circumstances under which plaintiff's failure to acquire his own boots would mandate a partial mitigation of damages. If Webb was aware both that the defendant was not going to supply him with boots and that he

---

6. Although defendant did not raise the comparative negligence issue as directly as it might have, we believe that the issue was placed before the district court in a manner sufficient to require a determination of whether or not plaintiff was at fault.

would have to make future trips into town on boat-related errands, and if there was sufficient time in which the necessary boots might easily and reasonably have been obtained, then Webb's inaction, in effect, constituted a failure to minimize present dangers and requires some lessening of damages. We note that the aperture for finding comparative fault on this basis is very narrow—the rule is confined to instances where there has been generous opportunities safely to correct the known dangerous situation,[7] and a heavy burden of proof rests with the defendant.

Also, if the plaintiff never mentioned his improper footwear to his chief, or, if ignoring[8] a safe method of work, plaintiff performed the bus station errand in an unnec-

essarily dangerous manner, then a finding that plaintiff was negligent would be proper.[9]

Ultimately the resolution of Dresser's contentions here depends on the making of basic factual determinations including findings with respect to what Webb actually told Colten, the opportunity for Webb to obtain boots, and the manner in which Webb carried out his responsibilities at the bus station.[10] This task is most properly undertaken in the first instance by the district court judge who originally heard the parties testify and can best judge their credibility. Thus, we send this case back to the lower court for its consideration of appellant's possible contributory fault. On remand, if the trial court concludes that

---

**7.** Here, the boat had been docked at Seward with the plaintiff aboard for two weeks and there is testimony that the plaintiff had been into Seward on a number of different occasions prior to the date of his accident.

**8.** The district court never resolved the conflicting testimony, *see* Section I *supra*, as to whether or not plaintiff Webb protested to his superior Colten about the lack of proper shoes and fairly relied on Colten to provide the necessary boots. If the court accepted plaintiff's statements that he informed the party chief three times of his footwear deficiency, then this alternative method of protecting his own well-being had been exhausted. If, however, Webb knew of the danger presented by his inadequate footgear and did not so inform his superior, then he should be viewed as having failed to take advantage of a viable avenue of safe conduct. Under the specific circumstances of this case, we believe, as noted above, that the latter finding would warrant a holding that the plaintiff was to some extent at fault. *See Mazzanti v. Lykes Brothers Steamship Co.,* 5 Cir. 1975, 524 F.2d 961; *Bonura v. Sea Land Service, Inc.,* 5 Cir. 1974, 505 F.2d 665, 670–71 (Gee, J., dissenting); *DuBose v. Matson Navigation Co.,* 9 Cir. 1968, 403 F.2d 875; *cf. White v. Rimrock Tidelands, Inc.,* 5 Cir. 1969, 414 F.2d 1336 (no comparative negligence where no knowledge of the danger and therefore no basis for protesting to superiors). These circumstances include the plaintiff's continuing personal knowledge of the absence of available proper footwear and the fact that plaintiff was aboard Dresser's boat for two weeks while it was docked at Seward—thus presenting the possibility that after notification to the party chief the equipment failure could have been remedied (or plans made for sending only adequately booted sailors into town). All of this could have oc-

curred without impeding the crew's regular work. *Compare Mazzanti v. Lykes Bros. Steamship Co., supra.* On remand, the district court should settle the remaining disputed factual questions, and then consider the effect of its conclusion on the issue of comparative negligence.

**9.** In *Johnson v. Warrior & Gulf Navigation Co.,* 5 Cir. 1975, 516 F.2d 77, this Court affirmed a district court determination of plaintiff's negligence where a longshoreman wore hushpuppy shoes while unloading a ship. However, we are not told whether or not the plaintiff in the *Johnson* case had easy access to a pair of work boots, informed his superior of his need for boots, or lacked alternate methods for completing his assigned task. For these reasons, among others, the *Johnson* decision is of limited usefulness to us in our examination of the present controversy.

**10.** Plaintiff contends that consistent with the explicit findings of fact and conclusions of law, the trial judge made an implied finding of no contributory fault. The general rule is stated by Professor Moore as follows:

> Where the trial court fails to make findings, or to find on a material issue, and an appeal is taken, the appellate court will normally vacate the judgment and remand the action for appropriate findings to be made.

J. Moore, *Federal Practice* § 52.06[2] at 2718. We regard plaintiff's possible negligence as a material issue, do not observe any clear indication that a finding on that issue is implicit in the district court's verdict, and consequently encounter no substantial reason to depart from the general rule as expressed above.

Webb was negligent, then that court must apportion the damages in accordance with the rules governing comparative fault in maritime cases. If, on the other hand, the facts supporting the purported negligence of plaintiff were not proved, then the original judgment in this case should be re-entered by the district court.

### E. Miscellaneous Contentions

■ Appellant argues that the trial court's denial of its motion for a continuance impaired its ability to adequately discover information about plaintiff's past earnings. As we stated in *United States v. 110 Bars of Silver*, 5 Cir. 1974, 508 F.2d 799:

> The grant or denial of a motion for continuance rests with the sound discretion of the court, and will be reversed only when an abuse of discretion is shown. *Id.* at 801.

Our examination of the record leads us to conclude that the district court did not abuse its discretion.

■ Finally, Dresser contends that the evidence did not support the judge's findings as to lost earnings. Although complete wage information for all recent years was not made available, the record contains sufficient evidence to support the court's finding.

Our consideration of this case confines us neither to the temperate nor the tropical zone of analysis. In fact, the shodding requirements we find here bring us to a new decisional latitude and longitude. Just as meteorology has an essential role in the world of ocean travel, so also there is an inescapable responsibility on shipowners to provide seaworthy vessels and on sailors to conduct themselves, insofar as is compatible with the rigors of their calling, in a prudent and responsible manner. Although we have determined that the defendant here failed its obligation, we believe that additional findings are necessary to a fair evaluation of the plaintiff's conduct—an evaluation which, in the first instance, should be undertaken by the trial court. Thus, we remand this cause to the district court for its consideration of the issue of comparative negligence.

VACATED and REMANDED.